Frieda Hempel v. Commissioner.
Hempel v. Commissioner
Docket No. 30724.
United States Tax Court
1952 Tax Ct. Memo LEXIS 48; 11 T.C.M. (CCH) 1070; T.C.M. (RIA) 52315; October 30, 1952
*48 John R. Olsen, Esq., for the petitioner. Francis J. Butler, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in income tax against petitioner as follows: Year
Deficiency
1939
$ 171.90
1940
643.70
1941
751.21
1943
2,900.51
1944
1,397.32
1945
1,665.51 At the hearing petitioner conceded the correctness of respondent's determination of deficiencies for the years 1939, 1940, 1941, and for 1943 in so far as it affects 1942, [1] and also that some of the assignments of error in the petition were not in issue. The remaining issues involve the amounts of business expenses including depreciation, and charitable contributions and medical expenses, to which petitioner is entitled as deductions for the years 1943, 1944 and 1945. Findings of Fact Petitioner, an individual residing at No. 271 Central Park West, New York City, filed her returns for the periods here involved with the collector for the third district of New York. Petitioner's tax liability for the years *49 1937 and 1938 was determined in a prior Memorandum Opinion, Docket No. 7993, entered June 23, 1947. Petitioner was for many years a leading coloratura singer in Germany and at the Metropolitan Opera House in New York. During the years in question, she was engaged in the business of a concert singer and singing teacher. She took the latter up some time after becoming a concert singer. The following schedule shows the amount of petitioner's professional income, business expenses claimed and net loss claimed for the years in question. Professional
Business
Year
Income
Expenses
Net Loss
1943
$3,995.75
$16,862.57
$12,866.82
1944
3,890.57
18,123.43
14,232.86
1945
4,146.86
15,676.33
11,529.47 In each of the above years petitioner used the amount of net business loss as an offset against her other income which included $15,000 annually received in each of the years in question from the August Heckscher Trust. During the years in question, petitioner had the following items of professional income: 1943
Fees for teaching and coaching
$2,200.00
Fred F. Finklehoffe and Paul Small
Big Time Co. for services as vocalist
in "Big Time"
1,500.00
Receipts from Town Hall concert
245.75
Blue Network, Inc.
50.00
Total
$3,995.75
1944
Vocal lessons
$2,010.00
Town Hall recital
630.57
Peekskill concert
250.00
Chautauqua concert
500.00
New Orleans & Baton Rouge concerts
500.00
Total
$3,890.57
1945
Vocal lessons
$3,000.00
Royalties from records
312.19
Town Hall concert
798.67
OWI
36.00
Total
$4,146.86
*50 The following schedule shows the amount of business expenses claimed, the amount allowed and the amount disallowed: Business
Expenses
Amount
Amount
Year
Claimed
Allowed
Disallowed
1943
$16,862.57
$10,712.67
$6,149.90
1944
18,123.43
13,093.81
5,029.62
1945
15,676.33
10,498.13
5,178.20
Petitioner spent the following amounts on clothes and personal appearance: 1943
Make-up and hair dresser
$ 273.19
Shoes, gloves, accessories
339.90
Costumes, headpieces, shoes, etc.
1,198.38
Total
$1,811.47
1944
Afternoon and evening dresses
$ 550.00
Sportswear
35.25
Pink crepe coat
56.06
Shoes, jewelry, etc.
142.21
Accessories
502.43
Gold coat and scarf
161.60
Hat and headpieces
273.53
Gown
289.81
Hats and accessories
136.96
Gowns
446.56
Accessories
137.42
Hat
34.59
Storage of coat
25.00
Total
$2,791.42
1945
Gowns, shoes, gloves, underwear, bras-
sieres, headdresses, stockings, jew-
elry, accessories and alterations
$1,383.56
Cleaning wearing apparel
128.90
Black wool coat
388.85
Afternoon dresses
249.62
Alteration of gowns
72.52
Bags, gloves
122.75
Gloves, headpieces, make-up
74.25
Storing and relining mink coat
75.00
Hats
173.22
Dresses, headdresses, jewelry, shoes
and accessories
324.45
Shoes, stockings, scarf, etc.
211.49
Total
$3,204.61
*51 Petitioner also spent the following amounts in 1944 and 1945: 1944
Food
$ 694.13
Food
827.65
Restaurants
71.76
Caterer
286.86
Liquor
271.50
Cash for maid
162.29
Butlers
26.00
Flowers
83.57
Total
$2,423.76
1945
Cash for maid
271.92
Gratuities
16.67
Food
832.93
Food
713.66
Flowers
120.18
Candy, nuts, butlers
175.80
Hotels & restaurants
498.84
Total
$2,630.00
In 1943 and 1944, opera tickets were purchased for use by petitioner's students. A maid was employed in 1943 and 1944 to whom payments of wages were made in cash in accordance with the maid's insistence and as required by the New York State Labor Law. The maid cleaned the studio in which petitioner transacted some of her business. In 1943, petitioner employed J. Flanagan, Clara Wachter, L. Lilly, and Sherman & Amsden in secretarial work and paid them $580.13. When petitioner gave concerts during the years in question, she paid all the expenses, including the salary of a manager. It is sometimes possible to arrange a concert where someone else guarantees the expenses but petitioner did not do that. The only person who stood to lose anything if the concerts were unsuccessful *52 was petitioner. The vocal lessons were given at 271 Central Park West which is the apartment petitioner lives in. The apartment has about six rooms with three bathrooms. Petitioner often gave lessons for nothing to pupils who were talented but poor. Those who could afford to pay were charged $10 and $15 a lesson. Any poor girl who had talent could get free lessons and music from petitioner. Petitioner looked upon her work of helping poor girls sing as charity. Petitioner entertained managers and other people with professional contracts at her studio apartment. She paid for the catering, food, drinks and flowers and sometimes she invited as many as 75 people to her apartment. In 1944 and 1945, petitioner had total meat bills of $827.65 and $832.93, respectively, and total grocery bills of $694.13 and $713.66, respectively. Where it would be cheaper or more convenient, she sometimes entertained people at hotels and restaurants. Petitioner also gave gratuities to colleagues who had done favors for her. For use on the stage, petitioner bought gowns, shoes, gloves, hats, headpieces, jewelry and other accessories. Such things often required cleaning. At least some of the clothes and *53 accessories the cost of which petitioner deducted were adaptable for general usage. Some of the expenses incurred by petitioner were personal expenses. Some of the furniture which petitioner has in the apartment in which she gave singing instruction was acquired seven to ten years previously. Some of the other furniture dates back to 1916, 1917 and 1918. The piano she uses was acquired in 1912 or 1913. The total cost figure used by petitioner in claiming depreciation in the amount of $1,250 included the cost of alterations made in the dining room set seven or eight years previously, the cost of transporting to the United States her piano which she bought in Europe, the cost of studio drapes and the cost of a record cabinet. In her 1943 and 1945 returns, petitioner claimed deductions of $275 and $334, respectively, as charitable contributions. These figures were reduced by respondent by $100 and $150, respectively. In 1945, petitioner gave five to ten dollars to each of the following: the Red Cross, the Saint Paul's Protestant Church, the Lutheran Church, and the A.S.P.C.A. She also gave $15 to a Mrs. Closs for an organization, the name of which she did not recall, and unspecified *54 amounts to the poor box in Saint Patrick's Church, the Brooklyn Lutheran Church, the Sisters, and a hospital. Petitioner contributed $175 and $184 during the years 1943 and 1945, respectively, for charitable purposes. Petitioner's medical expense deductions in her 1943 and 1944 returns were disallowed as not substantiated in excess of five per cent of the net income or adjusted gross income, respectively, as corrected by respondent. The deduction in petitioner's 1945 return was reduced solely to reflect respondent's correction of adjusted gross income. Opinion Although this proceeding deals almost entirely with deductions of amounts claimed to have been expended for business purposes, it varies fundamentally from . There respondent allowed nothing for claimed business expenses on the sole ground that the precise amount had not been adequately proved. Here, as our findings show, respondent allowed some 67 per cent of the total deductions. See , appeal dismissed, (C.A. 9) . The present difficulty is of a quite different character. Except for such *55 items as secretarial salaries, [2] most of the expenditures in controversy [3] could as well be personal as business in their nature. See . There has been no proof which we consider adequate that the proportions of such expenditures as those for food, clothing, and maid service, attributable to business purposes, were those stated by petitioner. There is no showing that in the entire period she paid anything for food or clothing except the amounts which she now claims were business expenses. Her allocation of the food item, for example, is one-fifth for personal expense representing the amount consumed by herself and her maid. That would mean that although petitioner's gross income was almost $20,000 a year, the amount per person per week expended for food in her household was $2.95. Some of the clothing was obviously of a character that could be given other than merely professional use. *56 Again, while we have no doubt that some part of the expenditures had a business purpose, it strains the credulity to assume that for the seven years presently involved petitioner would year after year spend more than the amount of her professional income for business purposes, sometimes over four times as much. In fact, for each of the years in dispute, respondent allowed an amount of business expenses over three times the income produced by the same expenditures. There is nothing in this record to convince us that any larger amounts than those already allowed by respondent were in fact expended for business purposes by petitioner. Nor are we satisfied that the expenditure for "opera tickets" was a business expense. There is no showing that the tickets were not purchased for those of petitioner's pupils who could not afford to pay for lessons. If so, worthy as the object may have been, donating the opera tickets like the lessons themselves was a charitable act on petitioner's part of a personal and not a business nature. Petitioner also claimed depreciation on her furniture which, according to her contention, was used for business purposes. Omitting the necessity of allocating *57 such a deduction between business and personal use since petitioner's apartment was also her personal residence, there has been a complete failure to establish the proper basis for the property. If, on the one hand, it was used for business purposes from its original acquisition dating as far back as 1912 and 1916 to 1918, the amount allowed, or at least allowable, for depreciation in prior years may well have exhausted any basis that the property originally had. . If, on the other hand, its use for business purposes was more recent, then the basis is not its original cost, which is all that appears from petitioner's testimony, but its value at the time it was converted from personal to business use, a figure as to which the record is entirely silent. . We accordingly conclude that petitioner has not sustained her burden of proving that the total amount allowed as business expense by respondent does not adequately cover petitioner's expenditures for business purposes as distinguished from those for her personal use. The deduction for charity is a pure question *58 of fact which has been disposed of in our findings. Giving full effect to petitioner's testimony, no more need have been expended in 1945 for allowable charitable purposes than the amount permitted as a deduction by respondent and there is no evidence whatever as to 1943. No effort was made to introduce evidence on the medical deductions for 1943 and 1944. For 1945, it follows automatically from the properly determined adjusted gross income. The deficiency must likewise be sustained in these respects. Decision will be entered for the respondent. Footnotes
1. No deficiency was determined for 1942 due to the forgiveness feature of the Tax Payment Act of 1943.↩
2. The disallowance was set up as to specific items but on the whole amount claimed. ↩
3. According to statements of petitioner's counsel, disputed items are: ↩
Amounts
Claimed in
Returns
1943
1944
1945
Opera tickets
$ 127.90
$ 216.70
Studio cleaning (maid)
572.00
476.00
Secretaries
2,100.00
House entertainment
2,054.55
1,245.92
$ 1,928.20
Wardrobe & wardrobe maintenance
2,085.14
2,957.82
2,964.64
Depreciation
1,250.00
1,250.00
1,250.00
$ 8,189.59
$ 6,146.44
$ 6,142.84
Total amount of business expenses allowed by
respondent
$10,712.67
$13,093.81
$10,498.13